Filed 6/21/24  P. v. Robey CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| THE PEOPLE, | B322607 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA084003) |
| v. |  |
| WILLIE LEE ROBEY, |  |
| Defendant and Appellant. |  |

APPEAL from an order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

_____

In 1995 separate juries convicted Willie Lee Robey and codefendant Leroy Clark of first degree murder. In 2020 Robey petitioned for resentencing under Penal Code former section 1170.95 (now section 1172.6).[1] Following briefing and an evidentiary hearing, the superior court denied the petition. The court found Robey could still be convicted of felony murder because the People proved beyond a reasonable doubt that he was a major participant in the underlying felony (robbery) and acted with reckless indifference to human life under the factors articulated in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), and *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*).

On appeal, Robey contends there was insufficient evidence to support the superior court's findings. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Evidence at Trial[2]*

In the summer of 1986 Robey, then 19 years old, took a road trip from Mississippi to Los Angeles with his friend Clark, who was older than Robey. Accompanying them were three women: Cassandra James, who was Robey's girlfriend at the time, and two sex workers who worked for Clark, nicknamed "Coco" and "Candy." Robey was aware Clark had a gun with him on the trip because at some point before they reached Los Angeles, Clark had an argument with one of the women and shot

---

[1]  Further statutory references are to the Penal Code.

[2]  The facts are taken from the testimony at Robey's trial and the exhibits admitted at trial. The trial transcripts and exhibits were admitted into evidence at the evidentiary hearing.

at her while she was running away.  When Robey tried to intervene, Clark pointed the gun at him.  Robey also knew Clark kept multiple pairs of handcuffs in the trunk of his car.

Soon after arriving in Los Angeles, the group ran out of money.  Around midnight on July 31, 1986, Clark drove the group to an upscale hotel near downtown Los Angeles.  Clark told Coco and Candy to go into the hotel bar to find a "trick" who had money and was staying at the hotel.  Clark told the women to then return to the car and give him the man's room number.  Coco and Candy went into the hotel bar as instructed.  A few minutes later, Candy returned to the car and told Clark she had identified a trick and gave Clark the room number.  Clark told her to go to the man's room, leave the door unlocked, and have the man undress.  Clark and Robey would follow shortly thereafter to rob the man.  Robey was in the car with Clark during these conversations.

A few minutes after Candy re-entered the hotel, Clark and Robey got out of the car.  Clark opened the trunk of the car, retrieved his gun, and placed it in the waistband of his pants.  Clark and Robey then entered the hotel.

Approximately 10 to 15 minutes later, Clark, Robey, and Candy came out of the hotel and got in the car where James and Coco had been waiting.  According to James, Clark had blood spatter on his shirt when he returned to the car.  Robey was cradling his hand and said, "The mother fucker bit me."  Clark asked Robey whether he had gotten the briefcase that was in the room.  Robey replied, "No.  I thought you got it.  I was busy trying to hold him and tie him down."  Candy was crying and said, "You all could have killed him."  Clark responded, "Well, bitch, what you give a fuck if we killed him or not?"

Clark had the victim's wallet, which he gave to Robey. Robey counted the money and gave Clark half of it. Clark said, "Man that mother fucker was fighting for that wallet . . . I bust him on the side of the head and he still didn't want to turn it loose." According to James, at no point during the night did Robey express any reluctance about participating in the robbery. The group drove back to Mississippi, using the victim's cash and credit cards for expenses along the way.

The next morning hotel employees discovered the dead body of Norris Hayes in his hotel room. Hayes was six feet two inches tall, weighed 190 to 195 pounds and, according to his wife, was a "very strong man" in "excellent physical condition." When the police arrived, they found Hayes's body naked, lying face down on the floor, and handcuffed to the bedframe. The mattress and box spring had been dislodged from the bedframe and were covering Hayes's upper body. A towel was wrapped around Hayes's face. Underneath the towel, Hayes had a gag in his mouth. The police officers found near the body a broken necklace and a silver and turquoise pendant shaped like a cowboy boot that James later identified as a necklace Robey had purchased for himself during the road trip.

The coroner later determined Hayes's cause of death was asphyxia due to manual strangulation and airway obstruction. The coroner explained the gag in Hayes's mouth blocked his windpipe, which could have caused Hayes's death. In addition, the manual strangulation caused Hayes's larynx to fracture into two halves, which also could have caused death. The coroner opined that Hayes's death was likely caused by a combination of the gag and manual strangulation. The coroner stated the

4

fracture of Hayes's larynx was an unusual injury that would have required "a tremendous amount of pressure on the neck."

Hayes's injuries included broken ribs, bruising on his face, mouth, wrists, and neck, as well as a two-inch laceration on his forehead, which would have bled profusely and could have been caused by being hit with a handgun.

After Robey was located in Mississippi in October 1993, he was interviewed by Los Angeles police detectives. The interview was recorded and played for the jury at trial, and the recording and transcript were admitted into evidence.[3] Robey admitted he had been in the car when Clark described the plan for the robbery and instructed Candy and Coco to go to the hotel bar. He also admitted he went to Hayes's room with Clark knowing Clark had a gun. Robey witnessed Clark fighting with Hayes and saw Clark hit Hayes over the head with the gun, causing Hayes to fall to the floor. Clark then handcuffed Hayes to the bed. Robey claimed that at that point he ran out of the room with Candy. Robey admitted using Hayes's credit cards several times on the return trip home. Robey stated he had been "all shook up and frustrated" when he returned to the car after the robbery. Robey said he had just been doing what Clark told him to do.

B.    *The Jury Verdict and the Prior Appeal*

In 1995 Clark and Robey were tried together with separate juries, and both were convicted of first degree felony murder

---

[3]    The interview consisted primarily of detectives reading Robey statements he had made to detectives a few days prior and Robey confirming and elaborating on those statements.

(§ 187, subd. (a)).[4]  The trial court sentenced Robey to an indeterminate state prison term of 25 years to life.  We affirmed the murder conviction on appeal.  (*People v. Clark* (May 14, 1998, B099630) [nonpub. opn.].)

C.      *The Petition for Resentencing*

On September 17, 2020 Robey filed a form petition for resentencing seeking to vacate his murder conviction and be resentenced in accordance with recent statutory changes relating to felony murder.  In his petition, Robey declared he was "convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine" and he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."  He also checked the box on the form stating he was not the actual killer and did not act with the intent to kill.  Further, he asserted he was not a major participant in the felony or did not act with reckless indifference to human life.[5]

The trial court appointed counsel to represent Robey and ordered the People to file a response to the petition.  On May 21,

---

[4]      Clark and Robey were also convicted of second degree robbery (§ 211).  However, the robbery convictions were reversed on appeal because the information had not been filed within the statute of limitations for robbery.  (*People v. Clark* (May 14, 1998, B099630) [nonpub. opn.] at p. 2.)

[5]      Clark also petitioned for resentencing pursuant to section 1172.6.  The superior court denied Clark's petition, and we affirmed.  (*People v. Clark* (April 24, 2024, B324176) [nonpub. opn.].)

6

2021 the trial court issued an order to show cause and set an evidentiary hearing.

At the May 27, 2022 evidentiary hearing the People offered into evidence the transcripts from Robey's trial, the recording and transcript of Robey's 1993 police interview, and the handwritten summary of Robey's first 1993 interview with police, which was signed by Robey and acknowledged in his handwriting as a true statement. Robey presented testimony from Dr. Elizabeth Cauffman, an expert on adolescent brain development, who testified that individuals between the ages of 10 and 25 typically have underdeveloped sections of their brains that cause them to act impulsively and be more susceptible to peer pressure. Dr. Cauffman did not examine Robey and did not provide any opinions regarding his maturity. The defense also offered into evidence Robey's academic transcripts from the first through twelfth grades.

At the conclusion of the hearing the superior court found "the People have proven beyond a reasonable doubt that petitioner is ineligible for resentencing." The court found Robey was a major participant in the robbery, stating he "was involved in this crime from start to finish" and "he wasn't just a wallflower in this situation." The court found Robey's statement that he left the hotel room before Hayes had been killed was not credible because it was contradicted by James's testimony that Robey and Clark came out of the hotel together after 10 to 15 minutes and the testimony of a hotel employee who stated he saw the men leave together. The court also found Robey acted with reckless indifference to human life based in part on its finding that the robbery and struggle with Hayes lasted approximately 10 to 15 minutes, during which Robey "had every opportunity in the world

7

to stop this from happening, and he chose not to."  Regarding Robey's age at the time of the murder, the court stated it "did consider the defendant's age.  There's nothing to suggest he was pressured by Mr. Clark.  Nothing to suggest that [Clark] had undue influence over Mr. Robey."

Robey timely appealed.

## DISCUSSION

A.    *Senate Bill No. 1437 and Section 1172.6*

Senate Bill No. 1437 (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule.  (*People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848; see *People v. Reyes* (2023) 14 Cal.5th 981, 984.)  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule as set forth in section 189, subdivision (e).  (*Reyes*, at p. 986; *Gentile*, at pp. 842-843.)  Section 189, subdivision (e), now requires the People to prove specific facts relating to the defendant's individual culpability:  The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of murder in the first degree (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life as described in section 190.2, subdivision (d) (the felony-murder special-circumstance provision) (§ 189,

subd. (e)(3)).  (See *Strong*, at p. 708.)  Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), effective January 1, 2022, expanded the scope of potential relief to apply Senate Bill 1437's ameliorative changes to individuals convicted of attempted murder and voluntary manslaughter.  (See § 1172.6, subd. (a).)

Senate Bill 1437 also provided a procedure (now codified in section 1172.6) for an individual convicted of felony murder or murder under the natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if the individual could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189.  (*People v. Lewis, supra*, 11 Cal.5th at p. 959; *People v. Gentile, supra*, 10 Cal.5th at p. 847.)

If the section 1172.6 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the sentencing court must appoint counsel to represent the petitioner upon his or her request pursuant to section 1172.6, subdivision (b)(3).  Where a petitioner makes the requisite prima facie showing the petitioner falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts.  (§ 1172.6, subds. (c) & (d)(1).)

Section 1172.6, subdivision (d)(3), provides that at the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the

9

petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019.  The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed."  Further, "[t]he prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."  (§ 1172.6, subd. (d)(3).)  We review the superior court's decision to deny the petition after an evidentiary hearing for substantial evidence, provided the court understood the elements of the offense and applied the proper standard and burden of proof.  (*People v. Reyes, supra*, 14 Cal.5th at p. 988; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.)

B.    *The Major Participant and Reckless Indifference Factors Under* Banks*,* Clark*, and* Scoggins

The Supreme Court's decisions in *Banks, Clark,* and *Scoggins* identified a nonexhaustive list of factors courts should consider in determining whether an individual was a major participant in the underlying felony and acted with reckless indifference to human life as required by section 189, subdivision (e)(3).  (*Scoggins, supra* 9 Cal.5th at pp. 676-677; *Clark, supra*, 63 Cal.4th at pp. 618-623; *Banks, supra,* 61 Cal.4th at p. 803.)  The Court cautioned that "no one of these considerations is necessary, nor is any one of them necessarily sufficient."  (*Banks*, at p. 803; accord, *Clark,* at p. 618; *People v. Strong, supra,* 13 Cal.5th at p. 706.)  Rather, the evaluation of an individual's culpability for felony murder according to these factors requires a "fact-intensive, individualized inquiry."

10

(*Scoggins,* at p. 683; accord, *People v. Montanez* (2023) 91 Cal.App.5th 245, 271.)

In *Banks*, the Supreme Court enumerated the following factors courts must consider in determining whether a defendant is a major participant under the totality of the circumstances: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?" (*Banks, supra,* 62 Cal.4th at p. 803, fn. omitted; accord, *Clark, supra*, 63 Cal.4th at p. 611.)

In *Clark* and *Scoggins*, the Supreme Court specified the relevant factors in determining whether a defendant acted with reckless indifference to human life under the totality of the circumstances.  The court observed these factors "'significantly overlap'" with the major participant factors because "'the greater the defendant's participation in the felony murder, the more likely that he [or she] acted with reckless indifference to human life.'" (*Clark, supra,* 63 Cal.4th at p. 615.)  The factors relevant to whether an individual acted with reckless difference to human life include: "Did the defendant use or know that a gun would be used during the felony?  How many weapons were ultimately used?  Was the defendant physically present at the crime?  Did he or she have the opportunity to restrain the crime or aid the victim?  What was the duration of the interaction between the

11

perpetrators of the felony and the victims?  What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force?  What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins, supra*, 9 Cal.5th at p. 677; accord, *Clark, supra*, 63 Cal.4th at pp. 618-622.)

As the *Scoggins* court explained, "Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'" (*Scoggins, supra*, 9 Cal.5th at p. 676; accord, *Banks, supra*, 61 Cal.4th at p. 808 ["[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient"; reckless indifference to human life requires "knowingly creating a '*grave risk of death*'" (italics added)].)  "Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.'" (*Scoggins*, at pp. 676-677, quoting *Clark, supra*, 63 Cal.4th at pp. 616-617.)  "Reckless indifference to human life has a subjective and an objective element.  [Citation.]  As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' [Citations.]  As to the objective element, "'[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in

the actor's situation.""" (*Scoggins*, at p. 677; accord, *Clark*, at p. 617.)

"In addition, 'a defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life.'" (*People v. Ramirez* (2021) 71 Cal.App.5th 970, 987 (*Ramirez*); accord, *People v. Keel* (2022) 84 Cal.App.5th 546, 558-559; *In re Moore* (2021) 68 Cal.App.5th 434, 454; see *People v. Oliver* (2023) 90 Cal.App.5th 466, 488 ["'in addition to the *Banks* and *Clark* factors, a defendant's youthful age must be considered' when determining whether a defendant 'was a major participant and acted with reckless indifference to human life based on the *totality* of the circumstances'"].)

"A juvenile's immaturity and failure to appreciate the risks and consequences of his or her actions bear directly on the question whether the juvenile is subjectively '"aware of and willingly involved in the violent manner in which the particular offense is committed"' and has 'consciously disregard[ed] "the significant risk of death his or her actions create."'" (*Ramirez*, *supra*, 71 Cal.App.5th at pp. 991, 993 [reversing order denying resentencing petition where the petitioner's age (15 years old) at the time of the crime "may well have affected his calculation of the risk of death posed by using the firearm in a carjacking, as well as his willingness to abandon the crime"]; accord, *People v. Jones* (2022) 86 Cal.App.5th 1076, 1092-1093 [vacating order denying resentencing petition following evidentiary hearing and remanding for consideration of defendant's youth (20 years old) at the time of the shooting].)

C.	*Substantial Evidence Supports the Superior Court's Finding Robey Was a Major Participant in the Underlying Robbery*

Substantial evidence supports the superior court's finding Robey was a major participant under the *Banks/Clark* factors. Although Robey did not plan the robbery, he was present when Clark devised and explained the plan, including the scheme to surreptitiously enter the hotel room while Hayes was naked, making it more difficult for Hayes to flee or call for help. Robey also knew Clark brought a gun into the hotel room and, based on the confrontation that had occurred during the road trip, Robey knew Clark was willing to shoot the gun at another person. Further, even if Robey initially believed the robbery did not pose a risk of grave danger, he certainly should have known there was a risk of death once a struggle ensued and Clark hit Hayes over the head with the gun, causing him to bleed profusely. (See *In re Harper* (2022) 76 Cal.App.5th 450, 461 [substantial evidence supported major participant finding where defendant "was clearly aware of the risk of death once the robbery was underway" due to victim fighting back].)

Moreover, Robey was present at the scene and actively involved in the robbery, and he did nothing to deescalate the violence or aid the victim. Robey admitted he saw Clark hit Hayes with the gun, which caused Hayes to fall to the ground. And, as Robey told James later, he assisted in subduing Hayes, and he engaged in the struggle long enough to get his finger bitten and his necklace broken. Even if Robey did not participate in causing Hayes's numerous injuries, he stood by and did nothing while Clark beat and strangled Hayes. Robey then fled with Clark instead of aiding or seeking help for Hayes. These

14

factors provide substantial evidence that Robey was a major participant. (See *People v. Nieber* (2022) 82 Cal.App.5th 458, 477 [substantial evidence supported major participant finding where petitioner was present when violence was used and left while victims were bound with their faces covered]; *In re Loza* (2017) 10 Cal.App.5th 38, 51 [substantial evidence supported major participant finding where petitioner was present and "did not intercede in any way" to stop violent conduct and fled afterward]; cf. *Banks, supra,* 61 Cal.4th at p. 803, fn. 5 ["In cases where lethal force is not part of the agreed-upon plan, absence from the scene may significantly diminish culpability for death. [Citation.] Those not present have no opportunity to dissuade the actual killer, nor to aid the victims, and thus no opportunity to prevent the loss of life."].)

Finally, after the robbery, Robey split the money with Clark and admitted to using Hayes's credit cards. This acceptance of and control over the robbery proceeds also supported a major participant finding. (See *People v. Mitchell* (2022) 81 Cal.App.5th 575, 591 [fact that petitioner split proceeds equally with gunman supported major participant finding].)

D. *Substantial Evidence Supports the Superior Court's Finding Robey Acted with Reckless Indifference to Human Life*

Substantial evidence similarly supports the superior court's finding Robey acted with reckless indifference to human life under the *Clark/Scoggins* factors. As discussed, Robey was aware Clark brought a gun with him into the hotel room, and Robey was physically present at the scene. In addition, the struggle with Hayes lasted 10 to 15 minutes, during which time Hayes was hit in the head with the gun, received several

15

abrasions and broken ribs, was handcuffed to the bed and gagged, had a towel tied around his head, and had his larynx crushed with a tremendous amount of force. The struggle also dislodged the mattress from the bed frame. This evidence, coupled with the testimony that Robey and Clark left the hotel at the same time, supports a finding Robey spent more than a fleeting amount of time in the hotel room and had an opportunity to stop the killing or at least help Hayes at some point during the robbery. (See *People v. Montanez, supra,* 91 Cal.App.5th at p. 283 [duration of felony supported finding of reckless indifference where victims were bound and incident lasted approximately 25 minutes]; *People v. Cody* (2023) 92 Cal.App.5th 87, 114 [reckless indifference finding supported where "the underlying burglary/robbery was not short" as evidenced by victim's bound hands and feet and defensive wounds]; see also *Clark, supra,* 63 Cal.4th at p. 620 ["[w]here a victim is held at gunpoint, kidnapped, or otherwise restrained in the presence of perpetrators for prolonged periods, 'there is a greater window of opportunity for violence' [citation], possibly culminating in murder"].)

As discussed, there was evidence Robey witnessed Clark shoot his gun at another person, but even if Robey was not aware of Clark's capacity for violence at the outset of the robbery, he certainly would have gained awareness as Clark beat and strangled Hayes. (See *In re Harper, supra,* 76 Cal.App.5th at p. 465 ["[e]ven if petitioner believed the plan was only to handcuff the manager to the toilet but not hurt him, he knew of the risk of death once the robbery was underway"]; *In re Loza, supra,* 10 Cal.App.5th at p. 53 ["to the extent there is doubt as to petitioner's reckless indifference [at the outset of the crime], any

16

objective observer would have appreciated the grave risk to life once [the accomplice] entered the store and demanded money from the clerk while counting down from five and threatening to shoot"]; see also *Clark, supra,* 63 Cal.4th at p. 619 [where a defendant had the opportunity "'to observe his cohorts,'" it is "'fair to conclude that he shared their actions and mental state'"].) Further, there was no evidence Robey attempted to minimize any danger to Hayes. To the contrary, Robey's statement that Hayes had bitten Robey while Robey tried to restrain him shows Robey participated in the violence rather than discouraged it. Considering the totality of the circumstances, these factors provide substantial evidence to support the finding of reckless indifference to human life.

Robey contends the superior court did not adequately consider his youth in finding he acted with reckless indifference to human life. At the time of the killing, Robey was 19 years old, which the superior court acknowledged was a relevant factor in making its findings. However, the court found there was no evidence to support a finding Robey felt pressured or intimidated by Clark. Even in recounting the story of Clark pointing a gun at him, Robey did not express any fear or apprehension. Further, Robey stood up to Clark by intervening to prevent Clark from shooting at one of the women. Nor was there evidence Robey was reluctant to follow Clark's plan for the robbery, was overly impulsive, or was otherwise too immature to appreciate the risks of his actions. Accordingly, the court properly considered Robey's age in evaluating his state of mind, and substantial evidence supports its finding Robey's youth did not insulate him from culpability. (See *People v. Oliver, supra,* 90 Cal.App.5th at p. 489 [failure to consider petitioner's youth harmless where there was

no evidence petitioner motivated by impulsivity or vulnerability to peer pressure]; cf. *Ramirez, supra,* 71 Cal.App.5th at p. 988 [evidence did not support finding of reckless indifference where 15-year-old petitioner told police he had not wanted to participate in carjacking but feared being killed by gang if he did not].)

## DISPOSITION

The order denying Robey's petition for resentencing is affirmed.

FEUER, J.

We concur:

MARTINEZ, P. J.

RAPHAEL, J.*

---

\*      Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.